IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

PHILIP J. TOMASHEK, II

v.                                        CIVIL ACTION NO.   2:17-cv-01904

RALEIGH COUNTY EMERGENCY
OPERATING CENTER, et al.,

MEMORANDUM OPINION AND ORDER

I. Introduction

Pending before the court is Defendants Raleigh County Sheriff's Office, Robert Steven Tanner, A.S. Meadows, J.D. Johnson and the Raleigh County Commission's Motion to Dismiss Plaintiff's Complaint [ECF No. 10]. The plaintiff filed a response [ECF No. 24], and the defendants filed a reply [ECF No. 27]. This matter is now ripe for adjudication. For the following reasons, the Motion is **GRANTED in part** and **DENIED in part**.

II. Factual Background

During the early morning of November 22, 2014, the plaintiff's wife called 911 and requested that the dispatcher send an ambulance to transport the plaintiff, Philip J. Thomashek, II, to the hospital because he "was exhibiting unusual behavioral and mood changes and she feared he suffered an injury to his head or inadvertent poisoning from the use of volatile automotive paint and cleaners in his garage." Not. Removal Ex. A, at ¶ 17 ("Am. Compl.") [ECF No. 1-1]. A short time later,

the plaintiff's wife called 911 again and canceled the request for medical assistance, advising the dispatcher she was taking the plaintiff to the hospital herself. *Id.* ¶ 18.

Despite the wife's second call, the dispatcher dispatched two Raleigh County Sherriff's Office officers, A.S. Meadows and J.D. Johnson, to the plaintiff's home. *Id.* ¶¶ 19–20. When they arrived, the plaintiff was closing the driveway gate and his wife and their daughters were in the vehicle, already en route to take the plaintiff to the hospital. *Id.* ¶ 20. The plaintiff's wife explained to the senior officer that "she was taking the plaintiff to the hospital because she believed that he had suffered head trauma or poisoning that was causing the [p]laintiff to exhibit an altered mental state." *Id.* ¶ 21.

Thereafter, the junior officer asked the plaintiff to get into the officers' vehicle. *Id.* ¶ 22. The plaintiff "who was experiencing severe claustrophobia as a result of his medical condition and believing an ambulance was on route as requested, asked to wait outside in the open rather than in the officers' vehicle." *Id.* ¶ 23. "Even though the [p]laintiff had done nothing wrong" the junior officer grabbed him, "twisted his arm behind his back and painfully bent his fingers back." *Id.* ¶ 24. "The senior officer then got involved and the officers used a taser on the [p]laintiff multiple times around his heart and used pepper spray on him, which exasperated the [p]laintiff's asthma." *Id.* ¶ 25. The officers also "repeatedly slammed the [p]laintiff's head into the pavement and punched him in the face and head." *Id.*

The plaintiff was arrested on two counts of assault on an officer and obstructing. *Id.* ¶ 28. Before the officers left with the plaintiff, the plaintiff's wife again asked the officers to take him to the hospital for treatment. *Id.* ¶ 27. The officers advised her that they would be taking the plaintiff to jail, not the hospital. *Id.* ¶ 28. The officers then took the plaintiff's eyeglasses and rescue inhaler from him and gave them to his wife. *Id.* ¶ 29.

The plaintiff was later taken to the Southern Regional Jail ("SRJ") where he was accepted into custody by one or more correctional officers. *Id.* ¶ 31. During his detention at SRJ, "he experienced severe chest pains, a racing heart, and excruciating muscle pains." *Id.* The plaintiff made multiple requests for medical care to the correctional officers as well as other officials. *Id.* ¶ 32. The plaintiff's wife also "called SRJ on numerous occasions to stress her concern for his health and his need for immediate medical care." *Id.* ¶ 36. The evening after he was arrested, the plaintiff was transported to the hospital. *Id.* ¶ 37. He was admitted there for ten days and diagnosed with encephalopathy, acute liver injury, and acute rhabdomyolysis. *Id.* ¶ 38.

The assault and obstruction charges brought against the plaintiff were eventually dropped. *Id.* ¶ 41. Thereafter, the plaintiff brought this civil action against several parties. The defendants that are relevant to this motion include: (1) Robert S. Tanner, the Sherriff of Raleigh County; (2) A.S. Meadows, an officer with the Raleigh County Sheriff's Office; (3) J.D. Johnson, an officer with the Raleigh County Sheriff's

3

Office; (4) the Raleigh County Sheriff's Office; and (5) the County Commission of Raleigh County ("RCC").

### III. Legal Standard

The defendants move for dismissal with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Defs.' Raleigh County Sheriff's Office, Robert Steven Tanner, A.S. Meadors, J.D. Johnson and the Raleigh County Commission's Mot. Dismiss Pl.'s Compl. ("Defs.' Mot.") [ECF No. 10]. A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When "faced with a Rule 12(b)(6) motion to dismiss . . . courts must . . . accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that

4

the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

IV. Discussion

a. The Plaintiff's Concessions

In his response to the defendants' motion, the plaintiff concedes that his claim for malicious prosecution in Count Thirteen is barred by the statute of limitations. Philip J. Tomashek II's Resp. Opp'n to Defs.' Mots. Summ. J. 4 [ECF No. 24]. He also concedes his assault claim in Count Eleven. *Id.* at 5. Therefore, dismissal is warranted as to these claims.

The plaintiff also concedes that he cannot recover punitive damages from RCC. *Id.* Therefore, to the extent the plaintiff requests punitive damages from RCC, dismissal is warranted.

Further, the plaintiff concedes that he can only maintain his three 42 U.S.C. § 1983 claims against Officers Meadows and Johnson in their individual capacities. *Id.* Therefore, dismissal is warranted as to Counts Fourteen, Sixteen, and Eighteen to the extent they are against Officers Meadows and Johnson in their official capacities.

b. Raleigh County Sheriff's Office

The plaintiff's complaint asserts several counts against the Raleigh County Sheriff's Office, and also alleges that the Raleigh County Sheriff's Office is liable for some of the counts asserted against other defendants. *See* Am. Compl. As this court

5

has previously held, "the Raleigh County Sheriff's Department is not an entity capable of being sued." *Webb v. Raleigh Cty. Sheriff's Dep't*, No. 5:09-cv-01253, 2010 WL 3702648, at *7 (S.D. W. Va. Sept. 16, 2010). The court explained that

> [w]hile West Virginia law provides for the election of sheriffs and the appointment of sheriff's deputies, there is no organic authority in state law that creates a sheriff's department or sheriff's office. This stands in contrast to entities such as volunteer fire departments and emergency service organizations, the existence of which is provided for by state law and both of which qualify as political subdivisions under Section 29–12A–3(c).

*Id.* Accordingly, dismissal is warranted as to all of the claims asserted, whether directly or indirectly, against the Raleigh County Sheriff's Department.

### c. Count Two – Negligence

Insofar as Count Two alleges that RCC is liable for the negligence of John Zilinski, dismissal is warranted because the court has already held that Zilinski is entitled to immunity for the negligence claims asserted against him.[1] Mem. Op. & Order 4–6 [ECF No. 43]. Insofar as Count Two alleges that RCC was negligent itself, dismissal is not warranted at this time.

### d. Count Nine – Negligent Infliction of Emotional Distress

Count Nine alleges negligent infliction of emotional distress against Officers Meadows and Johnson. Am. Compl. ¶¶ 104–08. "West Virginia currently recognizes

---

[1] The defendants argue that Zilinski is not employed by RCC and therefore RCC cannot be held liable for his negligence. Defs.' RCSO, Tanner, Meadows, Johnson, and RCC's Mem. ("Defs.' Mem.") [ECF No. 11]. The court does not have enough information to reach this issue and therefore will not make a finding regarding it.

two types of negligent infliction of emotional distress: 1) emotional distress based upon the fear of contracting a disease, and 2) emotional distress based upon 'witnessing a person closely related to the plaintiff suffer critical injury or death.'" *Wood v. C.O. Harshbarger*, No. 3:13-21079, 2013 WL 5603243, at *9 (S.D. W. Va. Oct. 11, 2013) (citations omitted). Neither type applies here. Thus, dismissal is warranted as to Count Nine.

### e. Count Fourteen – Excessive Force

Count Fourteen is a 42 U.S.C. § 1983 claim which alleges that Officers Meadows and Johnson used excessive force against the plaintiff in violation of the Fourth Amendment. Am. Compl. ¶¶ 129–47. The defendants argue that they are entitled to qualified immunity. Defs.' Mem. 18.

Under the doctrine of qualified immunity, "[g]overnmental officials performing discretionary functions are shielded from liability for money damages so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Maciariello v. Sumner*, 973 F.3d 295, 298 (4th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Supreme Court has established a two-step sequence for determining whether a government official is entitled to qualified immunity:

> First, a court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right. . . . Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The answer to both questions must be in the affirmative in order for a plaintiff to defeat dismissal on qualified immunity grounds.

"Under the first prong, a court must determine whether the facts as alleged, taken in the light most favorable to plaintiff, demonstrate the violation of a constitutional right." *Cline v. Auville*, No. 1:09-0301, 2010 WL 1380140, at *3 (S.D. W. Va. Mar. 30, 2010) (citing *Saucier*, 533 U.S. at 201). "It is clearly established that the Fourth Amendment confers upon individuals a constitutional right to be free from excessive force during the course of an arrest." *Weigle v. Pifer*, 139 F. Supp. 3d 760, 769 (S.D. W. Va. 2015) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). A "claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other seizure of a person is properly analyzed under the Fourth Amendment's objective reasonableness standard." *Estate of Armstrong ex rel. Armstrong v. Vill. Pinehurst*, 810 F.3d 892, 899 (4th Cir. 2016) (quoting *Graham*, 490 U.S. at 388) (internal quotation marks omitted). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. To determine whether an act was reasonable, courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.*

At this stage, the court must accept all factual allegations in the complaint as true. According to the complaint, Officers Meadows and Johnson were called to the plaintiff's home because he was experiencing a medical emergency. Am. Compl. ¶ 17. When the officers arrived, the junior officer asked the plaintiff to get into his vehicle. *Id.* ¶ 22. The plaintiff asked to wait outside in the open rather than in the officers' vehicle." *Id.* ¶ 23. Then, "[e]ven though the [p]laintiff had done nothing wrong" the junior officer grabbed him, "twisted his arm behind his back and painfully bent his fingers back." *Id.* ¶ 24. "The senior officer then got involved and the officers used a taser on the [p]laintiff multiple times around his heart and used pepper spray on him, which exasperated the [p]laintiff's asthma." *Id.* ¶ 25. The officers also "repeatedly slammed the [p]laintiff's head into the pavement and punched him in the face and head." *Id.* The facts as alleged make out a claim for a Fourth Amendment violation.

Therefore, the next question is whether the right was clearly established at the time of the violation. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202.

The Fourth Circuit has previously held that using pepper spray on an unarmed person who did not pose a threat was excessive. *Park v. Shiflett*, 250 F.3d 843, 852–53 (4th Cir. 2001). The Fourth Circuit has also made clear that "police officer[s] may *only* use serious injurious force, like a taser, when an objectively reasonable officer would conclude that the circumstances present a risk of immediate danger that could be mitigated by the use of force." *Armstrong*, 810 F.3d at 905. Lastly, the Fourth Circuit has held that punching a detainee in response to noncompliance with a deputy's orders is excessive. *Sawyer v. Asbury*, 537 F. App'x 283, 295 (4th Cir. 2013). Based on these holdings, it would be clear to a reasonable officer that the officers' conduct in this case was unlawful. Therefore, Officers Meadows and Johnson are not entitled to qualified immunity for Count Fourteen at this time.

### f. Count Sixteen – Procedural Due Process

Count Sixteen alleges that Officers Meadows and Johnson denied the plaintiff procedural due process in violation of the Fourth and Fourteenth Amendment. Am. Compl. ¶ 162–74. The plaintiff alleges that the defendants violated his "right to be free from malicious prosecution and seizure without probable cause under the Fourth Amendment and to be [free] from violations of due process under the Fourteenth Amendment." *Id.* ¶ 165. The plaintiff alleges that the defendants further "failed and refused to bring the [p]laintiff before a magistrate for an assessment of probable cause without unreasonable delay." *Id.* ¶ 170.

"To prevail on a procedural due process claim, a plaintiff must demonstrate that a liberty or property interest was taken in a procedurally deficient manner." *Crouse v. S. Lebanon Twp.*, 668 F. Supp. 2d 664, 674 (M.D. Penn. 2009). "The Supreme Court has established that when a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Morris v. United States*, No. 12-2926, 2014 WL 1272104, at *8 (D. N.J. Mar. 27, 2014) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)) (internal quotation marks omitted). Courts have extended this ruling to apply to procedural due process claims. *Id.*

"Thus, where the core of a plaintiff's claim arises from allegations of unlawful arrest, imprisonment, or prosecution, courts are directed to analyze those claims through the prism of the Fourth and not the Fourteenth Amendment." *Suydam v. Pennsylvania State Police*, No. 3:15-cv-00081, 2017 WL 620955, at *3 n.2 (M.D. Penn. Feb. 15, 2017); *see Souk v. City of Mount Hope*, No. 2:14-cv-26442, 2015 WL 5698509, at *6 (S.D. W. Va. Sept. 28, 2015). The Fourth Amendment "was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of persons or property in criminal cases." *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975).

Here, the plaintiff's procedural due process claim under the Fourteenth Amendment is really a claim that his Fourth Amendment rights have been violated. Therefore, to the extent the plaintiff invokes the Fourteenth Amendment's procedural due process provisions, dismissal is warranted.

"Regardless of the imprecise language chosen," however, the "[p]laintiff essentially challenges the circumstances underlying his arrest" under the Fourth Amendment. *Souk*, 2015 WL 5698509, at *6. Thus, the court will treat the plaintiff's claim under Count Sixteen as one for illegal seizure under the Fourth Amendment, Am. Compl. ¶ 169 ("Meadows and Johnson worked in concert to seize the [p]laintiff without any legal cause"), as well as one for failure to receive a probable cause determination following his arrest without a warrant as required by the Fourth Amendment. *Id.* ¶ 170 ("Meadows and Johnson . . . failed and refused to bring the [p]laintiff before a magistrate for an assessment of probable cause without unreasonable delay."). At this stage, dismissal is not warranted as to these claims.

### g. Count Nineteen – Constitutional Violations

In Count Nineteen, the plaintiff alleges "constitutional violations" against RCC. This count is void of a single factual allegation regarding what RCC did that amounts to a constitutional violation. Instead, the pleading amounts to mere "labels and conclusions." *Twombly*, 550 U.S. at 545. It "tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at

575) (internal quotation marks omitted). Therefore, dismissal of Count Nineteen is warranted.

V. Conclusion

For the reasons stated herein, the defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**. The defendants' motion to dismiss is **GRANTED** as to Counts Nine, Eleven, Thirteen and Nineteen.

In regards to Counts Two and Three, the motion is **GRANTED** as to the plaintiff's request for punitive damages against the County Commission of Raleigh County, but is otherwise **DENIED**.

In regards to Count Four, the motion is **GRANTED** as to the Raleigh County Sheriff's Office and as to the plaintiff's request for punitive damages against the County Commission of Raleigh County, but otherwise **DENIED**.

In regards to Counts Fourteen, Sixteen, and Eighteen, the motion is **GRANTED** as to Officers Meadows and Johnson in their official capacities, but **DENIED** as to Officers Meadows and Johnson in their individual capacities.

The remaining counts at issue in this motion, including Counts Seven and Twelve, state a claim to relief that is plausible on its face. Therefore, the motion is **DENIED** as to the remaining counts.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: January 23, 2018

13

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE