IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

PHILIP J. TOMASHEK, II

        Plaintiff,

v.                                            CIVIL ACTION NO. 2:17-cv-01904

RALEIGH COUNTY EMERGENCY
OPERATING CENTER, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

I.    Introduction

Pending before the court is Defendants Robert Steven Tanner, A.S. Meadows, J.D. Johnson, and the Raleigh County Commission's Renewed Motion for Summary Judgment [ECF No. 117]. The plaintiff filed a response [ECF No. 122], and the defendants filed a reply [ECF No. 123]. This matter is now ripe for adjudication. For the following reasons, the Motion is **GRANTED in part** and **DENIED in part**. The principal legal question before the court is one of first impression in this Circuit: Does *Heck v. Humphrey*, 512 U.S. 477 (1994), bar § 1983 claims following a plaintiff's successful completion of a pretrial diversion program? I find that it does not.

II.    Background

The parties agree that during the early morning of November 22, 2014, the plaintiff's wife called 911 and requested that the dispatcher send an ambulance to

transport the plaintiff, Philip J. Tomashek, II, to the hospital. The events that followed are almost entirely in dispute.

The plaintiff contends that his wife explained to the dispatcher that he needed an ambulance because he was behaving erratically. Pl.'s Resp. to Defs.' Mot. for Summ. J. ("Pl.'s Resp.") Ex. B, at 70 [ECF No. 122-2]. The plaintiff alleges that shortly thereafter, his wife again called 911, cancelling the request for medical assistance and advising the dispatcher that she was taking the plaintiff to the hospital. *Id.* at 78–79.

The plaintiff contends that despite his wife's second call, the dispatcher sent two Raleigh County Sheriff's Office officers, A.S. Meadows and J.D. Johnson, to the plaintiff's home with lights and sirens. Pl.'s Resp. Ex. E, at 24 [ECF No. 122-5]. The officers ultimately intercepted the plaintiff before he could leave for the hospital. Through deposition testimony, the parties provide different accounts of what happened next.

The plaintiff claims that he was walking toward a guardrail to sit when an altercation with the officers began. Pl.'s Resp. Ex. A, at 70 [ECF No. 122-1]. The plaintiff recalls the officers asking him to sit in the back of the police car, though the plaintiff claims he had done nothing wrong. *Id.* at 75–78. According to the plaintiff, as he was walking to the guardrail, "all of a sudden, [his] arm was being twisted behind [him], and [his] fingers were being bent and crunched" by one of the officers. *Id.* at 77. The plaintiff asserts that he saw the officer reach for him and reflexively

2

raised his hand to block the officer's reach. *Id.* All the plaintiff remembers happening next is being "beaten" and taken to the ground. *Id.* The officers then used a taser and pepper spray. *Id.* at 78.

The officers tell a different story. The officers contend that they believed they were responding to a possible domestic violence situation and that the plaintiff posed an immediate threat to the officers' safety. Defs.' Renewed Mot. for Summ. J. ("Defs.' Mot.") Ex. F, at 15 [ECF No. 117-6]. Moreover, according to Deputy Johnson, the plaintiff began aggressively "yelling and pointing" at his wife soon after their arrival. *Id.* at 21. Deputy Johnson contends that the plaintiff ignored and refused the officers' commands. *Id.* at 23. Deputy Johnson then purportedly asked the plaintiff to place his hands on the police car in order to detain the plaintiff with handcuffs. *Id.* The plaintiff allegedly resisted. *Id.* at 25–32. When asked what happened next, Deputy Johnson stated that he did not "exactly remember" how the plaintiff ended up on the ground. *Id.* at 32. Nonetheless, Deputy Johnson claims that while the plaintiff was on the ground, the plaintiff grabbed the other officer, Deputy Meadows. *Id.* at 32–33. It was at this point that Deputy Johnson instructed Deputy Meadows to retrieve a taser and deploy a stun to the plaintiff's thigh. *Id.* at 33. The plaintiff was then arrested on two counts of battery on a police officer and obstructing an officer.

The parties agree that, at the officers' direction, an emergency medical technician examined the plaintiff at the Raleigh County Sheriff's Office. The plaintiff was then taken into custody at Southern Regional Jail ("SRJ").

3

The next evening, he was transported to the hospital, where he was admitted for ten days and allegedly diagnosed with encephalopathy, acute liver injury, and acute rhabdomyolysis. Compl. ¶ 38 [ECF No. 1]. On December 8, 2014, after his release from the hospital, the plaintiff was arraigned on two counts of battery on a police officer and obstructing an officer. *Id.* ¶ 40.

The plaintiff later entered into a pretrial diversion agreement. Defs.' Mot. Ex. I [ECF No. 117-9]. The plaintiff successfully completed the 90-day diversion program, and all the charges against him were dismissed. Defs.' Mot. Ex. E [ECF No. 117-5].

Thereafter, the plaintiff brought this civil action, filing a twenty-count complaint against several parties. Robert Steven Tanner, A.S. Meadows, J.D. Johnson, and the Raleigh County Commission ("RCC") are the only remaining defendants. Counts Two (Negligence), Three (Negligence), Four (Negligence), Seven (Outrage), Twelve (Battery), Fourteen (Excessive Force), Sixteen (Procedural Due Process), and Eighteen (Deliberate Indifference) remain.

III.  Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case." *Lester v. Gilbert*, 85 F. Supp. 3d 851, 857 (S.D. W. Va. 2015) (quoting *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010)). "A genuine issue of material fact exists if . . . a

4

reasonable fact-finder could return a verdict for the non-movant." *Runyon v. Hannah*, No. 2:12-1394, 2013 WL 2151235, at *2 (S.D. W. Va. May 16, 2013) (citations omitted); *see Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) ("Disposition by summary judgment is appropriate . . . where the record as a whole could not lead a rational trier of fact to find for the non-movant."). The moving party bears the burden of showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp.*, 477 U.S. at 322–23. The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of summary judgment. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

IV. Discussion

Defendants Robert Steven Tanner, A.S. Meadows, J.D. Johnson, and RCC move for summary judgment as to all eight remaining counts.

### a. Section 1983 Claims

As a threshold matter, the court must address whether the plaintiff's remaining § 1983 claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). The defendants argue that *Heck* bars the plaintiff's § 1983 claims because the plaintiff entered into a pretrial diversion program for the charges of battery on an officer and obstructing an officer. I disagree.

*Heck* confronted the issue of § 1983 claims brought "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid." *Id.* at 486. The Court held that in order to proceed in those types of actions, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87. The Court held:

> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment

6

> against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 487 (emphasis in original) (footnotes omitted); *see also Wallace v. Kato*, 549 U.S. 384, 393 (2007) (noting, in a different context, that the *Heck* bar is raised only when there exists a criminal conviction that the § 1983 cause of action would impugn).

Courts disagree as to whether the imposition of a pretrial diversion program (or an analogous disposition, such as pretrial probation) constitutes a "conviction" for purposes of the *Heck* rule. The Sixth, Tenth, and Eleventh Circuits have concluded that *Heck* does not bar a subsequent lawsuit after disposition of a criminal case through a pretrial diversion agreement that ultimately results in the dismissal of criminal charges. *See S.E. v. Grant Cty. Bd. of Educ.*, 544 F.3d 633, 637–39 (6th Cir. 2008) (Kentucky juvenile pretrial diversion program); *Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1095 (10th Cir. 2009) (Kansas pretrial diversion program); *McClish v. Nugent*, 483 F.3d 1231, 1250–51 (11th Cir. 2007) (Florida pretrial intervention program); *see also Butts v. City of Bowling Green*, 374 F. Supp. 2d 532, 537 (W.D. Ky. 2005) (Kentucky pretrial diversion program).

The Second, Third, and Fifth Circuits have reached the opposite conclusion. *See Miles v. City of Hartford*, 445 Fed. Appx. 379, 382 (2d Cir. 2011) (Connecticut accelerated pretrial rehabilitation program); *Gilles v. Davis*, 427 F.3d 197, 209–11 (3d Cir. 2005) (Pennsylvania "Accelerated Rehabilitative Disposition" program); *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 655–56 (5th Cir. 2007) (Texas deferred adjudication procedure); *see also Cabot v. Lewis*, 241 F. Supp. 3d 239, 252–

54 (D. Mass. 2017) (Massachusetts pretrial probation program). This is an issue of first impression in this Circuit.

I find *Heck* inapplicable to the facts of this case. *Heck* is not raised when "there [is] in existence no criminal conviction that the cause of action would impugn." *Wallace*, 549 U.S. at 393. In this case, a judgment in favor of the plaintiff on his § 1983 claims would not imply the invalidity of his conviction or sentence because the plaintiff was not convicted of *any* offense.

Under West Virginia Code § 61-11-22(c), West Virginia's pretrial diversion agreement statute, a person who enters into a pretrial diversion agreement with a prosecutor and "successfully complie[s]" with the agreement's terms "is not subject to prosecution for the offense or offenses described in the agreement" unless the agreement states otherwise. *See also Parrish v. Auto Detailing by Me, LLC*, No. 5:12-cv-03759, 2014 WL 1153735, at *3 n.7 (S.D. W. Va. March 20, 2014) ("[P]retrial diversion does not involve an adjudication of guilt; charges are dismissed after a period of time if a defendant successfully completes a period of supervision."). Thus, a pretrial diversion agreement under West Virginia law is a means of *avoiding* a judgment of criminal guilt—the opposite of a conviction in a criminal action. Here, the plaintiff's criminal charges were dismissed after successful completion of the 90-day diversion program. An action cannot invalidate a conviction or sentence that does not exist.

I cannot find a dismissal of charges even remotely analogous to a conviction. Courts finding the imposition of pretrial diversion agreements or similar programs to constitute a conviction have erroneously disregarded *Heck*'s literal language. *See, e.g., Cabot*, 241 F. Supp. 3d at 253 (finding the approach of the Sixth, Tenth, and Eleventh Circuits "faithful to the literal language" of *Heck* but inconsistent with its "purposes"). To dismiss the plaintiff's § 1983 claims as barred by *Heck* "because of a potential conflict that we know now with certainty will never materialize would stretch *Heck* beyond the limits of its reasoning." *McClish*, 483 F.3d at 1252; *cf. Wallace*, 549 U.S. at 393 (concluding that *Heck* does not bar "an action which would impugn an *anticipated future conviction*" and characterizing that theory as a "bizarre extension of *Heck*"). Therefore, I conclude that *Heck* does not apply to bar the plaintiff's § 1983 claims in this case.

The plaintiff has three remaining § 1983 claims against Defendants Johnson and Meadows: Count Fourteen (Excessive Force), Count Sixteen (Procedural Due Process), and Count Eighteen (Deliberate Indifference). Defendants Johnson and Meadows have asserted qualified immunity for the § 1983 claims. I will address each claim in turn.

First, after reviewing the evidence presented on the issues raised by the parties, I **FIND** that genuine issues of material fact clearly exist as to the plaintiff's excessive force and procedural due process claims. Accordingly, I **DENY** the defendants' Motion as to Counts Fourteen and Sixteen. I now turn to Count Eighteen.

42 U.S.C. § 1983 subjects to civil liability any person who, acting under color of state law, deprives an individual of his constitutional or federal rights. In Count Eighteen, the plaintiff alleges a claim for deliberate indifference to serious medical needs under the Fourteenth Amendment. The plaintiff's claim is based on Meadows and Johnson's alleged failure to seek medical treatment for the plaintiff. Defendants Meadows and Johnson argue they are entitled to qualified immunity.

Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Thus, "immunity is a threshold issue which the court addresses before considering any of the defendants' proffered substantive bases for summary judgment." *Weigle v. Pifer*, 139 F. Supp. 3d 760, 768 (S.D. W. Va. 2015) (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). Under the doctrine of qualified immunity, "[g]overnmental officials performing discretionary functions are shielded from liability for money damages so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The Fourth Circuit has held that:

> When a government official properly asserts qualified immunity, the threshold question that a court must answer is whether the facts, when viewed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." However, "if a violation could be made

> out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established"—that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." The "answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds."

*Henry v. Purnell*, 501 F.3d 374, 377 (4th Cir. 2007) (citations omitted). Thus, the court must undertake a two-part inquiry: (1) viewing the facts in the light most favorable to the plaintiff, the court must determine if there was a constitutional violation; and (2) if so, whether the right violated was clearly established. *Id.* at 378. If the answer to either question is no, then the defendant is entitled to qualified immunity.

"Under the first prong, a court must determine whether the facts as alleged, taken in the light most favorable to plaintiff, demonstrate the violation of a constitutional right." *Cline v. Auville*, No. 1:09-0301, 2010 WL 1380140, at *3 (S.D. W. Va. Mar. 30, 2010). To establish a claim of deliberate indifference to serious medical needs, "the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Id.*

At this stage, the court must take the evidence in the light most favorable to the plaintiff. Even so, the record is devoid of any evidence that Meadows or Johnson were deliberately indifferent to the plaintiff's medical needs. In fact, there is no evidence that Meadows or Johnson even denied the plaintiff medical attention.

11

Meadows and Johnson called an ambulance for the plaintiff shortly after the altercation. Defs.' Mot. Ex. J [ECF No. 117-10]. The plaintiff was evaluated, at least for a short period of time, by an emergency medical technician at the Raleigh County Sheriff's Department. The plaintiff failed to cooperate with the emergency medical technicians and refused to speak to emergency personnel. Defs.' Mot. Ex. K, at 6–7 [ECF No. 117-11]. The plaintiff's failure to cooperate with emergency personnel cannot be attributed to the officers. As such, the plaintiff has failed to demonstrate the violation of a constitutional right, and Meadows and Johnson are entitled to qualified immunity. The court need not address whether the right was clearly established. The defendants' Motion is **GRANTED** as to Count Eighteen.

### b. State Law Claims

The plaintiff has five remaining state law claims. However, in his response to the defendants' Motion, the plaintiff stated that he "voluntarily dismisses the negligence claim brought against RCC" as alleged in Count Two. This appears to be an attempt to dismiss the claim but does not comport with the requirements of Rule 41(a). Even if the court construes it as a perversely stated request for voluntary dismissal pursuant to Rule 41(b), the court cannot grant dismissal. "At this stage in the litigation, an announcement of an intention not to pursue a claim can only be construed as a concession that there is no factual basis for the claim." *Miller v. Rubenstein*, No. 2:16-cv-05638, 2018 WL 651503, at *5 (S.D. W. Va. Jan. 31, 2018). The plaintiff provides no argument regarding any disputed facts nor asserts how the

facts provided support the assertions set forth in Count Two of the complaint. Therefore, the defendant's motion is **GRANTED** as to Count Two.

The court must next address the four state law claims that remain. Count Three alleges negligence against Meadows and Johnson. Count Four alleges negligence against Tanner and RCC. Count Seven alleges outrage against Meadows and Johnson. Count Twelve alleges battery against Meadows and Johnson. While the defendants' Memorandum directly addresses Counts Four and Twelve, it does not specifically mention Counts Three or Seven. With respect to the latter counts, the defendants only generally aver that Meadows and Johnson are entitled to immunity to "all state law claims."

After reviewing the evidence presented on the issues raised by the parties, I **FIND** that genuine issues of material fact clearly exist as to Counts Three, Seven, and Twelve. Thus, I **DENY** the defendants' Motion as to Counts Three, Seven, and Twelve. I now turn to Count Four.

Count Four alleges that Defendant Tanner (the Raleigh County Sheriff) and RCC were negligent by failing to adequately investigate officers prior to hiring, failing to provide appropriate training, oversight, and supervision, and failing to maintain and enforce policies and procedures. I will address each argument in turn.

Under West Virginia law, courts consider the following in a claim for negligent hiring:

> When an employee was hired, did the employer conduct a reasonable investigation into the employee's background

13

> vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring an unfit person?

*McCormick v. W.Va. Dep't of Pub. Safety*, 503 S.E.2d 502, 506 (W.Va. 1998) (quoting *State ex rel. West Virginia State Police v. Taylor*, 499 S.E.2d 283, 289 n.7 (W.Va. 1997)). The court must also consider "the nature of the employee's job assignment, duties, and responsibilities." *McCormick*, 503 S.E.2d at 507. The duty with respect to hiring and retention increases "as risks to third persons associated with a particular job increase." *Id.* An employer's duty is heightened when the prospective employee is a police officer, as police officers are "permitted to carry guns, use necessary force to effect arrest, and to enter civilian residences in certain circumstances." *Woods v. Town of Danville*, 712 F. Supp. 2d 502, 514 (S.D. W. Va. 2010).

Nonetheless, even in viewing the alleged facts in the light most favorable to the plaintiff, there is no evidence of negligent hiring. The plaintiff has failed to produce any evidence demonstrating that defendants Tanner or RCC failed to investigate Meadows or Johnson prior to hiring them. Moreover, the plaintiff admits that the officers even underwent psychological examinations as part of the application process. In addition, the plaintiff has not pointed to any evidence showing that there were risks in hiring either Meadows or Johnson, such as a poor prior employment history. Thus, the plaintiff's negligent hiring claim fails.

In addition, the plaintiff alleges that defendants Tanner and RCC were negligent in supervising or training Meadows and Johnson. This assertion also lacks merit.

To state a claim for negligent supervision, a plaintiff must show that "[a municipal defendant] failed to properly supervise [an employee officer] and, as a result, [the employee officer] proximately caused injury to the [plaintiff]." *Woods*, 712 F. Supp. 2d at 515 (citing *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 719, 725 (2000)). Negligent supervision claims are treated like other claims in negligence. *See Taylor*, 712 F. Supp. 2d at 725. The court must take the evidence in the light most favorable to the plaintiff.

Here, it is clear that both Meadows and Johnson received extensive training and supervision. Both officers received training at the West Virginia State Police Academy, where they were instructed on, among other things, the use of force, arresting persons, and providing necessary medical care. Both officers also received field training with the Raleigh County Sheriff's Department. Further, Meadows and Johnson had both responded to numerous domestic violence calls in the past, and there is no evidence that either officer had any issue in responding to prior calls. Negligence must not be inferred based on the existence of injury alone. *See Walton v. Given*, 215 S.E.2d 647, 651 (W.Va. 1975).

In support of his negligent supervision claim against Tanner and RCC, the plaintiff contends that Meadows and Johnson could not answer basic questions about

the department's policies and procedures. The plaintiff has failed to show, however, that his injury occurred as a result of the officers' alleged lack of knowledge of an unspecified policy, particularly in light of the extensive training both officers have received regarding the use of force, arresting persons, and providing medical care. The plaintiff argues further that the defendants violated a department policy requiring officers to report each use of force and to review each use of force. This argument likewise fails. The plaintiff has not produced any evidence—and *cannot* produce any evidence—that his injuries occurred as a result of the lack of a report or review, considering that the alleged failure to report or review the incident occurred *after* the altercation. Lastly, the plaintiff asserts Tanner and RCC were negligent because Johnson instructed Meadows to use a taser in violation of written policy. But the plaintiff has provided no evidence that a lack of supervision or training led to the alleged policy violation. Consequently, the plaintiff's claim for negligent supervision or training must fail. The defendants' Motion is **GRANTED** as to Count Four.

V. Conclusion

The defendants' Renewed Motion for Summary Judgment [ECF No. 117] is **GRANTED in part** and **DENIED in part**. The defendants' Motion is **GRANTED** as to Counts Two (Negligence), Four (Negligence), and Eighteen (Deliberate Indifference). The defendants' Motion is **DENIED** as to Counts Three (Negligence), Seven (Outrage), Twelve (Battery), Fourteen (Excessive Force), and Sixteen (Procedural Due Process).

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: September 26, 2018

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE